UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JASON L. SANDERS,

                    Plaintiff,                    Case No. 1:24-cv-115

v.                                        Honorable Ray Kent

UNKNOWN WARD et al.,

                    Defendants.

_____/

## **OPINION**

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*.[1] Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.12.)

       This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

---

[1] Although Plaintiff has had at least three cases dismissed on the grounds that they were frivolous, malicious, and/or failed to state a claim, in this action, Plaintiff has sufficiently alleged that he is in imminent danger of serious physical injury. As such, Plaintiff will be permitted to proceed *in forma pauperis* in this action.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[2]

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined all Defendants *except* Defendants Gregory,[3] Smith, Ward, and Blair. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's First Amendment retaliation claims. Plaintiff's Eighth Amendment conditions of confinement claims against remaining Defendants Gregory, Smith, Ward, and Blair regarding the lack of electricity in Plaintiff's cell, which prevented him

---

[2] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[3] In the case caption of the complaint, Plaintiff spells Defendant Gregory's last name as "Greggory." (Compl., ECF No. 1, PageID.1.) When listing the Defendants in the action and in the body of the complaint, Plaintiff spells this Defendant's last name as "Gregory." (*See, e.g.*, *id.*, PageID.2, 4.) In this opinion, the Court will refer to this Defendant as Defendant Gregory.

from using his CPAP machine, and his being housed with a cellmate who smokes will remain in the case. Plaintiff's request for emergency injunctive relief (ECF No. 6) will be denied without prejudice, and his motion to supplement (ECF No. 9) will be denied.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. In Plaintiff's complaint, he names the following DRF officials and medical personnel as Defendants: Prison Counselor Unknown Ward; Correctional Officer (CO) Unknown Gregory; Resident Unit Manager (RUM) Unknown Smith; RUM Unknown Blair; Deputy Warden Unknown Mates; Unknown Party #1, named as Medical Provider Jane Doe #1; Unknown Party #2, named as Medical Provider Jane Doe #2; Unknown Party #3, named as Medical Provider/Doctor Jane Doe #3; Grievance Coordinator Unknown London; and Unknown Party #4, named as Law Library Technician Jane Doe #4. (Compl., ECF No. 1, PageID.1–3.) Plaintiff sues Defendants in their individual and official capacities. (*Id.*, PageID.2–3.)

Plaintiff alleges that he arrived at DRF on December 21, 2023. (*Id.*, PageID.4.) Upon arrival, Plaintiff went through the intake medical check-up, and he was provided with the following medical details/accommodations: "24-hour electrical outlet required"; "hearing and vision impaired"; "CPAP with humidifier attached and sleep study equipment"; hearing aids with

batteries and supplies; footwear; and eyeglasses. (*Id.*)[4] Plaintiff states that all had been renewed in 2023 "with no expiration date." (*Id.*)

When Plaintiff arrived at his new cell, he saw that it "was trashed." (*Id.*) Plaintiff claims that there was "no ventilation" in the cell, the cell furnishings and mattresses "were destroyed," "the electric sockets [were] black and filled with sharp me[t]al pieces," there was "no heater support," the bulletin boards "were hanging off the wall charred black from a previous fire," "the paint on the floor, walls, [and] ceiling [were] burned," the window screens were "ripped open," "the emergency alert button . . . [was] broken," and "the toilet collect[ed] waste" from other prisoners. (*Id.*) That same day, December 21, 2023, Plaintiff reported the conditions of his cell to Defendant Gregory, and Plaintiff requested a cell change "because [Gregory] and other officers state[d] that they have to continuously shake down the cell . . . because of the prisoners' continuous smoking." (*Id.*) Plaintiff also requested a cell inventory form from Defendant Gregory "to avoid being charged for the destroyed cell furnishings and to have them all repaired." (*Id.*, PageID.4–5.) In response, Defendant Gregory stated: "Welcome to Carson City, we don't do cell inventory here." (*Id.*, PageID.5.) Plaintiff then requested a sergeant, explaining that the cell "was not adequate to accommodate [his] medical needs." (*Id.*) Defendant Gregory told Plaintiff that he would not call the sergeant. (*Id.*)

On December 27, 2023, Defendant Gregory "refused to open" Plaintiff's cell door "for exercise yard in retaliation," stating in front of other staff members, "[Plaintiff], you are not gonna make it here too much longer if you keep requesting to see a sergeant and writing grievances about

---

[4] In this opinion, the Court corrects the spelling and punctuation in quotations from Plaintiff's filings.

every little issue." (*Id.*) Later that same day, Plaintiff filed a grievance "on [Defendant] Gregory for retaliation." (*Id.*)

The next day, December 28, 2023, Plaintiff "reported the condition of [his] cell and [his] medical need for electricity to [Defendant] Smith." (*Id.*) In response, Defendant Smith stated: "If the PC didn't do anything, I'm not doing anything about it until he does." (*Id.*) Plaintiff informed Defendant Smith that he had already "tried to speak to . . . [Defendant] Ward," and that he "was denied a sergeant multiple times." (*Id.*) Plaintiff claims that he sent a kite to Defendant Ward on two occasions, and "brought up the issue while processing legal mail that [Plaintiff] was locked with a smoker." (*Id.*) Plaintiff alleges that Defendant Smith "refused to do anything about this issue." (*Id.*)

On January 2, 2024, Plaintiff's unit "was placed on an emergency lockdown, pending a major shakedown of the housing unit" due to "multiple fights." (*Id.*) The following day, January 3, 2024, Plaintiff was removed from his cell for a shakedown, and at that time, Plaintiff "reported the condition of [his] cell to [Defendant] Blair." (*Id.*, PageID.6.) In response, Defendant Blair stated: "Everything will be repaired in due time. Since there's no ventilation you are not at harm from prisoners' smoking." (*Id.*)

On January 11, 2024, Plaintiff submitted a medical kite because he had "on and off pains in [his] lungs and upper left chest area." (*Id.*) The following day, Plaintiff spoke with "an unknown nurse over the phone," and "when [Plaintiff] reported to her about [his] pains and that [he] was being treated for post-Covid symptoms and sleep apnea, as well as asthma and COPD, she stated that [this] must be occurring from a malfunction in [Plaintiff's] breathing (CPAP) machine." (*Id.*) The nurse told Plaintiff that "she would schedule [Plaintiff] to see the provider about this issue," but Plaintiff "was never called to healthcare or evaluated for chest pains that day." (*Id.*)

On January 14, 2024, Plaintiff "was called out after being scheduled to meet the provider." (*Id.*) "A nurse retrieved [Plaintiff's] CPAP machine," and informed Plaintiff "this i[s] not an evaluation for your pain[;] this is a compliance check." (*Id.*) The DRF inspector then came into healthcare and took Plaintiff's CPAP machine. (*Id.*) Plaintiff was "called into the medical offices and grilled with questions about multiple sheets of saran plastic wrap from [his] food trays, having 2 extra inhalers, . . . and an extra cartridge of cleaning sticks for [his] hearing aids due to them being thrown away during the major shakedown." (*Id.*, PageID.7.) Plaintiff states that "[a]fter giving honest responses" to "unknown nurse supervisor's" and the inspector's questions, Plaintiff was permitted to return to his housing unit with his CPAP machine. (*Id.*) Plaintiff states that he "was never evaluated for [his] medical symptoms that [he is] still experiencing to this day." (*Id.*) Plaintiff states that "it is difficult to breath," "[he] can only take 2 pain pills per day," and his "chest pains are worsening." (*Id.*)

During a facility inspection at an unspecified time in January of 2024, Defendant Mates "escorted his supervisor," the deputy director of the MDOC, around DRF, and Plaintiff "attempted to explain" Plaintiff's unspecified "issue" to Mates, but Mates "said he didn't have time to stand and listen." (*Id.*, PageID.6.) Plaintiff then sent a kite to Defendant Mates, but Plaintiff "never received a response." (*Id.*, PageID.6–7.)

On January 21, 2024, Defendant Gregory came to Plaintiff's cell after Gregory had been off work for an unspecified period of time. (*Id.*, PageID.7.) Defendant Gregory asked Plaintiff if he was "still complaining about [his] cell," and Gregory requested that Plaintiff and his cellmate (inmate Fox) exit their cell for a shakedown. (*Id.*) Defendant Gregory searched the cell for forty-five minutes, and then "came out with a garbage can full of stuff." (*Id.*) Plaintiff claims that everything in the cell "was flipped upside down," and Defendant Gregory stated: "Congratulations

Fox, you just got your bunky some tickets; I hope he beats your little ass." (*Id.*, PageID.7–8.) Plaintiff alleges that later that same day, Defendant Gregory wrote Plaintiff "a misconduct ticket in retaliation." (*Id.*, PageID.8.) Plaintiff states that in the misconduct report, Defendant Gregory claimed that he entered the cell because Plaintiff's cellmate (inmate Fox) was smoking. (*Id.*) After the cell shakedown, a non-party officer told Plaintiff that "Gregory says you are on his radar for writing grievances and helping other prisoners with their litigation." (*Id.*)

On January 22, 2024, maintenance replaced the electrical socket in Plaintiff's cell; however, Plaintiff claims that it "has already been destroyed." (*Id.*)

On January 26, 2024, Plaintiff had a medical appointment with Defendant Unknown Party #3. (*Id.*) Defendant Unknown Party #3 questioned Plaintiff about "having 'drugs' in [his] CPAP machine," and Plaintiff was told that if he "misuse[d] it again, [Defendant Unknown Party #3] would take it away." (*Id.*) In response, Plaintiff stated that he had not used drugs in the last twenty-three years, and he told Defendant Unknown Party #3 "that she can't allege that [Plaintiff] was using drugs because [Plaintiff is] Black." (*Id.*)

At an unspecified time in 2024, Defendant London, the grievance coordinator, denied Plaintiff's grievance regarding "the unconstitutional conditions of [his] cell." (*Id.*, PageID.9.) Plaintiff claims that Defendant London "approved" Plaintiff's white cellmate's grievance, which "stated the exact same allegations." (*Id.*) Plaintiff claims this was "discrimination to [his] race and ethnicity." (*Id.*, PageID.9–10.)

At another unspecified time in 2024, Plaintiff signed up for a "law library callout." (*Id.*, PageID.10.) Plaintiff completed a request for two copies of forms that "the Ionia Circuit Court Clerk told [Plaintiff he] ha[d] to use . . . for mandamus in state court." (*Id.*) Plaintiff claims that Defendant Unknown Party #4 denied the request, stating: "I do not process copies for prisoners

who litigate against prison staff or conditions." (*Id.*) Plaintiff alleges that Defendant Unknown Party #4 then ordered Plaintiff to leave the library forty minutes before his "callout was over." (*Id.*)

Plaintiff asserts that because he is in a cell without a usable electrical outlet and "with a known smoker," his "health and safety (life) is put at a substantial risk of serious harm or death." (*Id.*, PageID.8.) Plaintiff further claims that "medical staff are attempting to take away [his] only source of relief in retaliation to [his] complaints and grievances for false reasons." (*Id.*, PageID.9.)

After filing his complaint, Plaintiff filed several supplements. In Plaintiff's first-filed supplement, he seeks to add COs Warren, Keck, John Doe #1, and John Doe #2, and Sergeant Unknown Bigalow as Defendants. (First Suppl., ECF No. 5, PageID.33.) In the supplement, Plaintiff alleges that on January 29, 2024, he "made an additional attempt to resolve this matter with [Defendant] Ward," explaining that Plaintiff "was experiencing multiple asthma attacks, [and] chest and lung pain from secondhand smoke and from not being able to utilize [his] CPAP machine." (*Id.*, PageID.27.) Plaintiff also alleges that at an unspecified time when he requested "a cell switch for [his] cellmate," who is a smoker, Defendant Gregory "yelled out 'I told [Plaintiff] if he has an issue with his cellmate smoking then beat his ass and put him out; if it's up to me and my officers, we are not moving anybody,' and '[Plaintiff] can complain[] to [Defendant] Ward if he's the victim of secondhand smoke.'" (*Id.*, PageID.27–28.)

On January 30, 2024, Plaintiff attempted to "copy the medical accommodation for prisoners," and Defendant Unknown Party #4 denied Plaintiff's request. (*Id.*, PageID.28.) The following day, January 31, 2024, Plaintiff went to Defendant Ward's office "to process legal mail," and Plaintiff asked Defendant Ward if "they w[ould] honor [Plaintiff's] need for a special medical accommodation cell, removing [Plaintiff] from th[e] cell where [his] cellmate had destroyed the

9

electrical socket, preventing [Plaintiff] from utilizing [his] CPAP machine." (*Id.*) Plaintiff claims that Defendants Ward and Gregory told Plaintiff, "we don't do accommodation moves." (*Id.*)

Plaintiff "attempted to exhaust through medical staff, which resulted in healthcare staff threatening to confiscate [his] CPAP machine for arbitrary retaliatory reasons." (*Id.*) Plaintiff also claims that he "attempted to grieve this issue by filing the exact same grievance that [his] cellmate filed," and Plaintiff's "grievance was rejected," and his "attempts to resolve this issue ended in a retaliatory ticket from Gregory and threats of more retaliation and a daily cell search from Gregory if [Plaintiff] continued writing grievances." (*Id.*, PageID.28–29.)

Additionally, on January 31, 2024, Defendant Keck, ordered Plaintiff and his cellmate (inmate Fox) "to exit the cell so he could 'shake' the cell down" because Keck said he "smelled smoke." (*Id.*, PageID.29.) In the shakedown, Defendant Keck found "a burning wic (prison candle) that he had retrieved from [Plaintiff's] cellmate's window." (*Id.*) Keck also took the cord for Plaintiff's CPAP machine, telling Plaintiff that he would "have to put a kite in the box" if he wanted the cord. (*Id.*, PageID.29–30.) Plaintiff told Keck that he "need[ed] the cord to be able to use [his] CPAP machine in order to breath at night," and in response, Keck stated: "I called health services that's the most I can do." (*Id.*, PageID.30.)

On January 31, 2024, Plaintiff told Defendants John Doe #1, John Doe #2, and Sergeant Bigalow that Plaintiff needed "to contact health services for a cord or another CPAP machine," and "each officer refused to call." (*Id.*) The next day, February 1, 2024, Keck told Plaintiff that he had "notified unknown medical provider [#]1, unknown medical provider #2, and the unknown medical doctor," "who stated they would call back, yet never did." (*Id.*, PageID.31.) On second shift, Officer Ryan "notified health services stating that Plaintiff needed medical attention due to not being able to breath and chest pains and received the exact same response, 'that they would

call back.'" (*Id.*, PageID.31–32.) Plaintiff "made the same complaints to [Defendant] Warren" on third shift, and Warren "stated that he called health are, but never called." (*Id.*, PageID.32.) Plaintiff complained to Sergeant Bigalow on February 3, 2024, but Bigalow ignored Plaintiff. (*Id.*)

In Plaintiff's second-filed supplement, Plaintiff seeks to add Nurse Drew Wright as a Defendant, and Plaintiff requests emergency injunctive relief. (Second Suppl., ECF No. 6, PageID.36–37.) Plaintiff alleges that on February 5, 2024, Defendant Wright responded to Plaintiff's healthcare request, "stating that [Plaintiff] would not receive an emergency inhaler or a CPAP cord until a future compliance check callout." (*Id.*, PageID.36.)

In Plaintiff's third-filed supplement, he states that on February 9, and February 11, 2024, two unspecified retaliatory misconduct reports that he received from Defendant Gregory and one unspecified retaliatory misconduct report that he received from Defendant Keck were dismissed by an administrative law judge. (Third Suppl., ECF No. 8, PageID.55.) Plaintiff also states that "healthcare staff" have still not given him "an emergency inhaler after 3 request[s]," nor has he been evaluated "for constant spasms of lung and upper left mass chest pains." (*Id.*) Further, Plaintiff states that on February 11, 2024, his mother called DRF "to ask the Deputy Warden (Mates) for assistance getting adequate medical care, but she did not receive a response." (*Id.*, PageID.56.)

Plaintiff also filed a motion to supplement (ECF No. 9) with an attached declaration (ECF No. 9-1). In the declaration, Plaintiff states that on March 22, 2024, he was placed in a different cell, and this cell also had a nonworking electrical outlet. (ECF No. 9-1, PageID.60.) Plaintiff claims that at unspecified times, he "made complaints to Defendants Keck, Gregory, Ryan, and several unknown supervisors that [he is] requesting to add to the complaint with additional claims

like the ones in [his] original complaint." (*Id.*) Additionally, Plaintiff states that he is "still held in conditions that pose a substantial risk to [his] health and safety." (*Id.*)

Based on the foregoing allegations, the Court construes Plaintiff's complaint and supplements to present claims under the First Amendment, Eighth Amendment, and Fourteenth Amendment. As relief, Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (Compl., ECF No. 1, PageID.12.)

## II.     Pending Motions

### A.     Motion to Supplement

After filing three supplements, Plaintiff filed a motion to supplement. (ECF No. 9.) Plaintiff attached a declaration to his motion, but he did not attach a proposed supplement to the motion.

Under Rule 15(d) of the Federal Rules of Civil Procedure, a party may seek, and the court may permit, supplemental pleadings "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Here, it is not clear if Plaintiff's present motion is a request for the Court to accept his three previously filed supplements or if Plaintiff seeks leave of Court to file a fourth supplement.

To the extent that Plaintiff seeks leave of Court to file his three previously filed supplements, his motion is denied as unnecessary because his three prior supplements were already filed in the case, and the Court considers the supplements in this opinion. Further, to the extent that Plaintiff seeks leave of Court to file a fourth supplement, his motion is denied because Plaintiff failed to attach a proposed supplement to his motion, so the Court is unable to determine whether allowing a further supplement is appropriate. *Cf. Beydoun v. Sessions*, 871 F.3d 459, 469–70 (6th Cir. 2017) (recognizing that, without Plaintiff's proposed amendment, a court cannot determine whether "justice so requires" leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2)); *Wolgin v. Simon*, 722 F.2d 389, 394–95 (8th Cir. 1983); *Nation v. United States Gov't*, 512 F.

12

Supp. 121, 124–25 (S.D. Ohio 1981); *Williams v. Wilkerson*, 90 F.R.D. 168 (E.D. Va. 1981)

Accordingly, for these reasons, Plaintiff's motion to supplement (ECF No. 9) will be denied.

### B.    Request for Emergency Injunctive Relief

In Plaintiff's second-filed supplement, Plaintiff requests emergency injunctive relief "to ensure that he receives proper medical care and placement in a smoke free environment with adequate ventilation." (Second Suppl., ECF No. 6, PageID.36–37.)

Preliminary injunctions and temporary restraining orders are some of "the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of

success on the merits of his § 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. Although the Court makes no final determination on this issue, it is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his claims.

Accordingly, Plaintiff's request for emergency injunctive relief will be denied without prejudice.

## III.    Misjoinder

### A.    Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

15

> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Gregory is the first Defendant identified by name in the factual allegations of the complaint.[5] Specifically, Plaintiff alleges that on December 21, 2023, Plaintiff reported the conditions of his cell to Defendant Gregory. (Compl., ECF No. 1, PageID.5.) On December 27, 2023, Plaintiff claims that Defendant Gregory "refused to open" Plaintiff's cell door "for exercise yard in retaliation," stating in front of other staff members, "[Plaintiff], you are not gonna make it here too much longer if you keep requesting to see a sergeant and writing grievances about every little issue." (*Id.*) The next day, December 28, 2023, Plaintiff "reported the condition of [his] cell and [his] medical need for electricity to [Defendant] Smith." (*Id.*) Subsequently, on January 3, 2024, Plaintiff was removed from his cell for a shakedown, and at that time, Plaintiff "reported the

---

[5] The analysis of joinder must start somewhere. By accepting the first-named Defendant in Plaintiff's factual allegations as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

condition of [his] cell to [Defendant] Blair." (*Id.*, PageID.6.) In Plaintiff's first-filed supplement, he alleges at an unspecified time when Plaintiff requested "a cell switch for [his] cellmate," who is a smoker, Defendant Gregory "yelled out 'I told [Plaintiff] if he has an issue with his cellmate smoking then beat his ass and put him out; if it's up to me and my officers, we are not moving anybody.'" (First Suppl., ECF No. 5, PageID.27–28.) Plaintiff also alleges that on January 31, 2024, he went to Defendant Ward's office "to process legal mail," and Plaintiff asked Defendant Ward if "they w[ould] honor [Plaintiff's] need for a special medical accommodation cell, removing [Plaintiff] from th[e] cell where [his] cellmate had destroyed the electrical socket, preventing [Plaintiff] from utilizing [his] CPAP machine." (*Id.*, PageID.28.) Plaintiff claims that Defendants Ward and Gregory told Plaintiff, "we don't do accommodation moves." (*Id.*)

Plaintiff's claims against Defendants Gregory, Smith, Ward, and Blair regarding the conditions of his confinement are transactionally related. However, Plaintiff's allegations against all of the other Defendants named in the original complaint and in the supplements stem from discrete, subsequent events that occurred during Plaintiff's incarceration at DRF. It appears that Plaintiff believes that all of the events set forth in the complaint and supplements are related simply because they occurred during his incarceration at DRF. However, such belief does not transform separate, subsequent events regarding the medical care, or the lack thereof, that Plaintiff received, the responses to Plaintiff's grievances, and the confiscation of Plaintiff's CPAP machine cord into events that arise out of the same transaction or occurrence.

Accordingly, the Court concludes that Plaintiff's claims against Defendants Gregory, Smith, Ward, and Blair are properly joined. However, Plaintiff has improperly joined the remaining Defendants.

### B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined all Defendants except Defendants Gregory, Smith, Ward, and Blair to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239,

1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). The allegations in Plaintiff's complaint begin in December of 2023. (*See* Compl., ECF No. 1, PageID.4.) Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against the misjoined Defendants, and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if claims against the misjoined Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop all Defendants except Defendants Gregory, Smith, Ward, and Blair because they are misjoined. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice to the institution of new, separate lawsuits.[6] *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs.").

## IV.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

---

[6] If Plaintiff wishes to proceed with his claims against the misjoined Defendants, he may do so by filing new civil action(s) on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's incarceration at DRF does mean that all claims arising out of these events are properly joined.

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In this action, as to remaining Defendants Gregory, Smith, Ward, and Blair, the Court construes Plaintiff's complaint and supplements to raise First Amendment retaliation claims against Defendant Gregory and Eighth Amendment conditions of confinement claims against

20

Defendants Gregory, Smith, Ward, and Blair. The Court first addresses Plaintiff's First Amendment retaliation claims against Defendant Gregory.

### A.      First Amendment Retaliation Claims

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.      Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Here, Plaintiff references submitting written grievances and making oral complaints. Therefore, at this stage of the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

### 2.      Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the

defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

### a.      Denial of Yard Time

Plaintiff alleges that on one occasion, Defendant Gregory "refused to open" Plaintiff's cell door "for exercise yard in retaliation," stating in front of other staff members, "[Plaintiff], you are not gonna make it here too much longer if you keep requesting to see a sergeant and writing grievances about every little issue." (Compl., ECF No. 1, PageID.5.)

Under certain circumstances denying a prisoner access to yard time may constitute an adverse action; however, denying a prisoner access to yard time would not constitute adverse action if the deprivation is de minimis. *See, e.g.*, *Pollard v. Clark*, No. 1:20-CV-00194-SPB-RAL, 2021 WL 5911055, at *7 (W.D. Pa. Nov. 4, 2021) (citations omitted), *report and recommendation adopted*, No. CV 20-194, 2021 WL 5909807 (W.D. Pa. Dec. 14, 2021); *cf. Perry v. McDaniel*, No. 4:20-CV-00052-JM-JJV, 2022 WL 952689, at *6 (E.D. Ark. Mar. 17, 2022) (concluding that "[a]single incident of cutting an inmate's outdoor recreation time from 90 minutes to 60 minutes is not the type of adverse action that would chill a prisoner of ordinary firmness from filing a grievance" (citations omitted)), *report and recommendation adopted*, No. 4:20-CV-00052-JM-JJV, 2022 WL 947333 (E.D. Ark. Mar. 29, 2022), *aff'd*, No. 22-1981, 2022 WL 16843142 (8th Cir. Sept. 8, 2022).

Here, the Court concludes that under the circumstances alleged by Plaintiff, the one-time denial of yard time resulted in a de minimis deprivation, and, therefore, does not constitute an adverse action. Accordingly, any First Amendment retaliation claim premised on this one-time denial of yard time will be dismissed.

### b.      Misconduct Reports & Cell Searches

In Plaintiff's complaint, he alleges that on January 21, 2024, Defendant Gregory searched Plaintiff's cell, and that later that same day, Defendant Gregory wrote Plaintiff "a misconduct ticket in retaliation." (Compl., ECF No. 1, PageID.7–8.) Additionally, in Plaintiff's first-filed supplement, he claims that at an unspecified time, he "attempted to grieve this issue [(apparently the conditions of his cell)]," and his "attempts to resolve this issue ended in a retaliatory ticket from Gregory and threats of more retaliation and a daily cell search from Gregory if [Plaintiff] continued writing grievances." (First Suppl., ECF No. 5, PageID.28–29.)

The issuance of a misconduct charge can be considered an adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[] an adverse action"); *see also Hill*, 630 F.3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"); *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation."). Further, a cell search may be considered sufficiently adverse to satisfy the adverse-action requirement of *Thaddeus-X*, where the search leaves the cell in disarray and results in the confiscation or destruction of materials. *See Bell*, 308 F.3d at 606 (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)).

At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff's receipt of a misconduct ticket and the cell searches constituted adverse action.

### 3.      Retaliatory Motive

Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

In this action, Plaintiff alleges that on December 21, 2023, he verbally complained to Defendant Gregory regarding the conditions of his cell. (Compl., ECF No. 1, PageID.4.)

Thereafter, on December 27, 2023, Plaintiff filed a grievance against Defendant Gregory because Gregory did not open Plaintiff's cell door for recreation. (*Id.*, PageID.5.)

Then, in a conclusory manner, Plaintiff alleges that on January 21, 2024, Defendant Gregory came to Plaintiff's cell, asked Plaintiff if he was "still complaining about [his] cell," and requested that Plaintiff and his cellmate (inmate Fox) exit their cell for a shakedown. (*Id.*, PageID.7.) After conducting the shakedown, Defendant Gregory stated: "Congratulations Fox, you just got your bunky some tickets; I hope he beats your little ass." (*Id.*, PageID.7–8.) Plaintiff alleges that later that same day, Defendant Gregory wrote Plaintiff "a misconduct ticket in retaliation." (*Id.*, PageID.8.) Plaintiff also claims that after the cell shakedown, a non-party officer told Plaintiff that "Gregory says you are on his radar for writing grievances and helping other prisoners with their litigation." (*Id.*) Additionally, Plaintiff claims that on an unspecified date, he "attempted to grieve this issue [(i.e., the conditions of his cell)]," and his "attempts to resolve this issue ended in a retaliatory ticket from Gregory and threats of more retaliation and a daily cell search from Gregory if [Plaintiff] continued writing grievances." (First Suppl., ECF No. 5, PageID.28–29.)

Although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d

at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

In this action, although Plaintiff alleges that he had submitted at least one grievance against Defendant Gregory and made oral complaints to Defendant Gregory before Defendant Gregory took the alleged adverse actions against Plaintiff (i.e. searching Plaintiff's cell and issuing a misconduct ticket)—suggesting temporal proximity—the fact that one event precedes another does not necessarily show a retaliatory motive. Here, besides temporal proximity, the only allegation in the original complaint that suggests a retaliatory motive for the cell search and misconduct is Plaintiff's assertion that a non-party officer told Plaintiff that he was on Gregory's "radar for writing grievances and helping other prisoners with their litigation." (Compl., ECF No. 1, PageID.7.) Additionally, in Plaintiff's first-filed supplement, he alleges that at an unspecified time, he "attempted to grieve [the] issue" and the "attempts to resolve this issue ended in a retaliatory ticket from Gregory and threats of more retaliation and a daily cell search"; however, he fails to provide any facts about when these events occurred. (First Suppl., ECF No. 5, PageID.28–29.)

As an initial matter, with respect to Plaintiff's reference to helping other inmates with their litigation, although a prisoner filing his own grievances constitutes protected activity, a prisoner typically does not have an independent right to help others with their legal claims and grievances. *Herron v. Harrison*, 203 F.3d 410, 415–16 (6th Cir. 2000) (citing *Thaddeus-X*, 175 F.3d at 395). Further, as to the grievances that Plaintiff filed, Plaintiff's allegations of retaliation are entirely conclusory. Although Plaintiff engaged in protected conduct by filing grievances, and the alleged retaliatory acts occurred after Plaintiff's protected conduct, Plaintiff merely alleges the ultimate fact of retaliation without providing facts to support his conclusory assertions. And, Plaintiff's assertion that a non-party officer told Plaintiff that he was on Defendant Gregory's "radar," with

no further explanation or supporting facts, does not on its own show retaliatory motive. In short, Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Under these circumstances, a vague suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). And, such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, for these reasons, Plaintiff's First Amendment retaliation claim against Defendant Gregory will be dismissed.

### B. Eighth Amendment Claims

The Court construes Plaintiff's complaint to raise Eighth Amendment conditions of confinement claims against Defendants Gregory, Smith, Ward, and Blair.

The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every

26

unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Plaintiff alleges that on December 21, 2023, upon his arrival at DRF, his new cell "was trashed," and, among other things, "the electric sockets [were] black and filled with sharp me[t]al pieces." (Compl., ECF No. 1, PageID.4.) Plaintiff explained to Defendant Gregory that the cell "was not adequate to accommodate [his] medical needs," and requested that Defendant Gregory call a sergeant about the matter. (*Id.*) Defendant Gregory told Plaintiff that he would not call the sergeant. (*Id.*) Plaintiff next alleges that he "reported the condition of [his] cell and [his] medical need for electricity to [Defendant] Smith" on December 28, 2023. (*Id.*) In response, Defendant Smith stated: "If the PC didn't do anything, I'm not doing anything about it until he does." (*Id.*) Further, Plaintiff alleges that on January 3, 2024, he was removed from his cell for a shakedown, and at that time, Plaintiff "reported the condition of [his] cell to [Defendant] Blair." (*Id.*, PageID.6.) In response, Defendant Blair stated: "Everything will be repaired in due time. Since there's no ventilation you are not at harm from prisoners smoking." (*Id.*) Additionally, in Plaintiff's first-filed supplement, he alleges that on January 29, 2024, he "made an additional attempt to resolve this matter with [Defendant] Ward," explaining that Plaintiff "was experiencing multiple asthma attacks, [and] chest and lung pain from secondhand smoke and from not being able to utilize [his] CPAP machine." (First Suppl., ECF No. 5, PageID.27.)

Although Plaintiff has by no means proven his claim and some of his allegations lack specificity, taking Plaintiff's allegations as true and in the light most favorable to him, at this stage of the proceedings, the Court will not dismiss his Eighth Amendment conditions of confinement claims against Defendants Gregory, Smith, Ward, and Blair regarding the lack of electricity in Plaintiff's cell, which prevented him from using his CPAP machine, and his being housed with a cellmate who smokes.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*, deny Plaintiff's request for emergency injunctive relief (ECF No. 6) without prejudice, and deny his motion to supplement (ECF No. 9).

Further, the Court will drop as misjoined all Defendants *except* Defendants Gregory, Smith, Ward, and Blair. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice. Additionally, having conducted the review required by the PLRA, the Court will dismiss Plaintiff's First Amendment retaliation claims. Plaintiff's Eighth Amendment conditions of confinement claims against remaining Defendants Gregory, Smith, Ward, and Blair regarding the lack of electricity in Plaintiff's cell, which prevented him from using his CPAP machine, and his being housed with a cellmate who smokes remain in the case.

An order consistent with this opinion will be entered.


Dated:   May 10, 2024                                    /s/ Ray Kent
                                                         Ray Kent
                                                         United States Magistrate Judge

28